IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| MARY A. STOKESBERRY, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV  08-142-CWD |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Respondent. | ) | |

<u>Introduction</u>

Currently pending before the Court for its consideration is Petitioner Mary A. Stokesberry's  ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed March 27, 2008. The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

**I.**
**Procedural and Factual History**

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on November 21, 2002.  This application was denied initially and on reconsideration, and a hearing was held on September 13, 2004, before Administrative Law

Judge ("ALJ") Robin Henrie.  ALJ Henrie issued a decision finding Petitioner not disabled on January 10, 2005, and Petitioner timely requested review by the Appeals Council, which denied her request for review on July 20, 2005.

Petitioner filed a second application for Disability Insurance Benefits and Supplemental Security Income on February 16, 2005, alleging disability due to heart condition, vertigo, lower back pain, and thyroid problems.  Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

ALJ John J. Flanagan held a hearing on March 21, 2007, taking testimony from Petitioner and vocational expert Anne Aastum.  (AR 498-528.)  ALJ Flanagan issued a decision finding Petitioner not disabled on April 26, 2007.  (AR 19-26.)  Petitioner filed a timely appeal to the Appeals Council which denied her request for review, making the ALJ's decision the final decision of the Commissioner.  (AR .)  Petitioner appealed this final decision to the Court.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 64 years of age.  She completed eleven years of education and her past relevant work includes garment clerk/fitting room attendant.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  ALJ Flanagan found Petitioner had not engaged in substantial gainful activity since her alleged onset date.  At step two, it must be determined whether claimant suffers from a severe impairment.  ALJ Flanagan found Petitioner's mild degenerative disc disease in her lumbar spine "severe" within the meaning of

**Memorandum Decision and Order - Page 2**

the Regulations. Step three asks whether a claimant's impairments meet or equal a listed

impairment.  ALJ Flanagan found that Petitioner's impairments did not meet or equal the criteria

for the listed impairments.  If a claimant's impairments do not meet or equal a listing, the

Commissioner must assess the residual functional capacity ("RFC") and determine at step four

whether the claimant has demonstrated an inability to perform past relevant work.  ALJ Flanagan

found Petitioner was able to perform her past relevant work as a fitting room/garment clerk .  If a

claimant demonstrates an inability to perform past relevant work, the burden shifts to the

Commissioner to demonstrate at step five that the claimant retains the capacity to make an

adjustment to other work that exists in significant levels in the national economy, after

considering the claimant's residual functional capacity, age, education and work experience.

Having found Petitioner not disabled at step four, ALJ Flanagan did not need to proceed to step

five; however, he did find that Petitioner could perform the full range of light work activities.

## III.
## Standard of Review

Petitioner bears the burden of showing that disability benefits are proper because of the

inability "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which . . . has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A);

*Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be

disabled only if her physical or mental impairments are of such severity that she not only cannot

do her previous work but is unable, considering her age, education, and work experience, to

engage in any other kind of substantial gainful work which exists in the national economy.  42

U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Where the ALJ makes a careful consideration of

subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**IV.**
**Discussion**

Petitioner contends ALJ Flanagan erred by applying the presumption of non-disability under *Chavez v. Bowen*, 884 F.2d 691 (9th Cir. 1988), because she presented new evidence of "changed circumstances."  Further, Petitioner argues that the ALJ erred in discrediting the opinion of her treating physician, Dr. Welch.  Finally, Petitioner argues that the ALJ erred in his RFC assessment by failing to include all of the limitations imposed by Petitioner's impairments.

**A.     The Chavez presumption**

In his decision, ALJ Flanagan determined under *Chavez* that ALJ Henrie's prior decision that the claimant retained the RFC to perform light work gave rise to a continuing presumption that the claimant continues to be not disabled unless the Petitioner can demonstrate "changed circumstances."  ALJ Flanagan determined that Petitioner did not present evidence of changed circumstances and therefore failed to rebut the *Chavez* presumption. (AR 22.) Petitioner argues that the ALJ's decision should be remanded because she did present new evidence illustrating new limitations with respect to Petitioner's RFC.  Specifically, Petitioner argues that she provided new evidence of mental limitations and that Dr. Welch's 2005 opinion, showing more limitation than previous RFC assessments, was improperly discredited.

The principles of res judicata apply to administrative decisions, although the doctrine is

applied less rigidly than to judicial proceedings.  *Chavez v. Brown*, 844 F.2d 691, 693 (9th Cir.

1988) *citing Lyle v. Secretary of Health and Human Servs.*, 700 F2d 566, 568 n.2 (9th Cir.

1983).  In the Ninth Circuit, if the first administrative law judge finds no disability, a

presumption of continuing non-disability arises in the second proceeding. Acquiescence Ruling

97-4(9).  To overcome the presumption, the claimant must prove changed circumstances

indicating a greater disability.[1]  *Chavez v. Bowen,* 844 F.2d at 693 *citing Taylor v. Heckler*, 765

F.2d 872, 875 (9th Cir. 1985).  Changed circumstances may include a change in the claimant's

age category under 20 C.F.R. §§404.1563 or 416.963, an increase in severity of claimant's

impairments, the existence of an impairment not previously considered, or a change in the

criteria for determining disability.  Acquiescence Ruling 97-4(9).  If the presumption is not

rebutted, the ALJ must determine that the claimant is not disabled. *Id*. If the presumption is

rebutted, the previous ALJ's findings concerning RFC, work experience and education cannot be

reconsidered by a subsequent judge absent new information regarding those decisions not

presented to the first ALJ.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008); see also

*Id.*  The Acquiescence Ruling also indicates that the first ALJ's findings with respect to all of the

sequential evaluation steps require the same deference.[2]  Acquiescence Ruling, 97-4(9).

        Petitioner argues that she submitted new evidence which demonstrated degeneration of

---

[1]In *Chavez v. Brown*, the Ninth Circuit held that reaching the age of 55, which has legal
significance in determining disability, constituted a changed circumstance precluding the
application of res judicata to the first administrative law judge's ultimate finding of no disability.
*Id*.

[2] It states: "...this Ruling applies only to a finding of a claimant's residual functional
capacity, education, or work experience, or other finding required at a step in the sequential
evaluation process for determining disability provided under 20 CFR 414.1520..."  Acquiescence
Ruling 97-4(9).   20 CFR 414.1520 describes the five-step sequential evaluation process.

her impairments overall and reflected changes in her condition since the time that ALJ Henrie made his decision.  Specifically, Petitioner points to the findings of Drs. Radnovich and Eisenbeiss as raising new questions and limitations that the ALJ failed to address.  Additionally, with respect to mental evaluations, Petitioner argues that Dr. Eisenbeiss' report presented new mental impairments, and that her anxiety was more fully developed in the new records.

Respondent argues that *Chavez* was appropriately applied, because the new evidence presented by the Petitioner did not establish changed circumstances.  First, Respondent argues that the psychological examination by Dr. Eisenbeiss did not demonstrate that anxiety or memory loss were medically determinable impairments and did not constitute a changed circumstance.  Further, Respondent points out that Petitioner failed to allege any mental impairment at the administrative level including during her hearing in front of ALJ Flanagan.[3] The Court will address these arguments in turn.

**B.      Evidence of mental limitations**

In support of Petitioner's contention that she presented new evidence of mental limitations to ALJ Flanagan, she refers to the opinion of Dr. Michael J. Eisenbeiss, entries in Dr. Welch's 2005 treatment notes, and evidence of financial concerns relating to her health care that allegedly caused Petitioner stress and anxiety.  (Petitioner's Brief p. 11-13, Docket No. 15.)

Dr. Eisenbeiss examined Petitioner on April 19, 2005. (AR 346-352.)  In his report, he recorded that Petitioner complained of several physical problems, including lower back pain, tachycardia episodes a few time each day, vascular cluster headaches, wrist and thumb pains

---

[3] With respect to the later argument, the Court notes that Petitioner did fail to address her mental limitations in her hearing and in her application.  However, as ALJ Flanagan chose to consider them in his decision, the Court need not address Respondent's argument further.

from carpal tunnel, and positional vertigo.  After Dr. Eisenbeiss administered certain tests, he

concluded that he saw "no indications of a mental health disorder" and assigned Petitioner a

Global Assessment of Functioning score of 75.[4]   Further, he stated:

> I do think she is able to perform work-related mental activities such as
> understanding remembering, sustaining attention and persistence, and interacting
> socially.  She does have most likely borderline intelligence which showed that
> being difficult.  There is some minor difficulties with auditory memory.  How
> much of that is real and how much she is making that up, I was unable to
> determine.

 The ALJ did not analyze Dr. Eisenbeiss' report in detail, except as a basis for his conclusion that

"this record is insufficient to show any "severe" medically determinable mental impairment or

combination of impairments."  (AR 23.)

The Court finds that ALJ Flanagan did not err in his determination that Dr. Eisenbeiss'

report did not support a conclusion that Petitioner had a medically determinable mental health

problem that had worsened since ALJ Henrie's decision, or a mental condition that would affect

her ability to work because she had "minor auditory memory problems." (AR 352.) ALJ

Flangan's conclusion also is supported by the lack of any other evidence reflecting any more

serious mental impairments.

Petitioner also argues that there is new evidence in the record demonstrating more severe

anxiety related disorders.  In reviewing the record, the Court notes that Petitioner's anxiety

related disorders were before ALJ Henrie when he considered Petitioner's prior application for

---

[4] A GAF score of 75 indicates that "[i]f symptoms are present, they are transient and
expectable reactions to psycho social stressors (e.g. difficulty concentrating after family
argument); no more than slight impairment in social, occupational, or school functioning[.]"
*American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.
Text Revision 2000) (DSM-IV-TR).

benefits. (AR 94-107.)  Further, the Court notes that the information presented with the prior

application indicated that the source of this anxiety, as identified by Dr. Welch, was "mostly due

to her unemployment, and having to ask others for money for her meds." (AR 83.)  However,

Petitioner contends that her anxiety worsened, as indicated in records demonstrating her

financial inability to pay for recommended medical treatment. (Pet. Brief p. 11, Docket No. 15.)

 First, Petitioner refers to a record from Dr. Mohan Kumar on May 29, 2006, indicating

that Petitioner had abnormal lab results and complained of weight loss and anxiety.  (AR 421.)

Petitioner also identifies another record by Dr. Kumar on May 9, 2006, indicating that Petitioner

told him she had three episodes of chest pain in one month but that she did not go the doctor due

to financial issues.  This record also indicates that she refused a further cardio work up due to her

financial situation.  (AR 423-426.)  Petitioner points to a third record on June 9, 2006,

illustrating that Petitioner refused a biopsy or further work up on a thyroid nodule, due to

financial reasons.  (AR 418-419.)  Finally, a record by Dr. Savita Hedge on November 15, 2006,

indicates Petitioner complained of anxiety. (AR 413.) The Court finds that, despite mention of

financial problems, these records do not indicate any psychiatric problem associated with stress.

Specifically, in the "Psychiatric" section of the first record, the doctor noted that stress was

"absent."  (AR 421.) The second record also indicates that her psychiatric status was normal (AR

425-426) while the third is absent of any mention of psychiatric status.

 Noting that Petitioner has had anxiety related to financial concerns since at least 2003,

and that the record contains only more frequent mention of financial related stress without

evidence of more pronounced stress or limitations associated with that stress, the Court finds that

ALJ Flanagan's determination that Petitioner did not provide any evidence that her preexisting

anxiety had become more pronounced after ALJ Henrie's decision was supported by substantial evidence.[5]

Finally, Petitioner points to Dr. Welch's conclusion that her "disability is more mental, and her limitation is not musculoskeletal, except for her sumbosacral spine." (AR 364.) Petitioner suggests that this statement is based upon Dr. Welch's conclusion that anxiety was playing a larger role in her disability. (Pet. Brief p. 11, Docket No. 15.)  However, Dr. Welch made a similar statement regarding Petitioner's stress in April 2003, stating "[s]he is under increasing stress, mostly due to her unemployment and having to ask others for money for her medications." (AR 83.)  Without further explanation from Dr. Welch regarding the basis for his statement, the Court finds that ALJ Flanagan did not err in concluding that Dr. Welch's 2005 opinion does not demonstrate changed mental health status.

Therefore, the Court finds that ALJ Flanagan did not err by concluding that Petitioner, despite presenting arguably new evidence, did not demonstrate that her mental health status had changed or that she had new medically determinable mental limitations that would impact her ability to work.  Thus, the Court finds that with respect to ALJ Flanagan's RFC assessment, Petitioner's objections based on mental health limitations do not constitute sufficient grounds for remand.

## C.      Evidence of Increased Severity of Petitioner's Conditions

Petitioner argues that she provided evidence that her condition had worsened.  In making this claim, she references the opinion of Dr. Welch and alleges that ALJ Flanagan erred in

---

[5] The Court finds the mention of anxiety in the record before ALJ Henrie particularly important as the Court infers that, by considering the record as a whole, ALJ Henrie considered Petitioner's anxiety in making his determination that Petitioner was not disabled.

discrediting Dr. Welch's 2005 partially completed RFC assessment.

### 1. Dr. Welch's 2005 opinion

Petitioner further argues that the RFC analysis prepared by her treating physician, Dr. Welch, presented new evidence that her condition had worsened and that ALJ Flanagan improperly rejected this opinion in making his determination that she presented no evidence of changed circumstances.

First, the Court agrees that Dr. Welch's opinion presents more pronounced limitations than the prior RFC assessments considered by ALJ Henrie.  Thus, ALJ Flanagan was required to take this new evidence into account in determining whether Petitioner could perform her prior job as a retail/garment clerk which was classified by vocational expert Ms. Aastum as light work. (AR 525.)  ALJ Flanagan did consider Dr. Welch's opinion in making his RFC determination; however, he discredited the opinion on the basis that Dr. Welch was Petitioner's treating physician only until the doctor retired in May 2005 and the conclusion that Dr. Welch's opinion was not supported by the record.[6]

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. Cir. 1995).   Reports of treating physicians submitted relative to a petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and his or her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984).  Although the ALJ is not bound by

---

[6]As the Court addressed the argument that Petitioner presented changed circumstances based on the appearance of mental limitations earlier, the Court will not address it again here.

**Memorandum Decision and Order - Page 11**

expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981).

Even when a treating or examining physician's opinion is contradicted, that opinion can be rejected only for specific and legitimate reasons supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). To satisfy this requirement, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. In other words, the ALJ must do more than offer his conclusions - he must explain why his assessments, rather than those of the doctors, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

However, an ALJ need not accept the opinion of a treating physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Kirk v. Astrue*, Slip Copy 2008 WL 2595178 (W.D. Was. 2008) *citing Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v.Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (2001). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition on

the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Petitioner argues that the 2005 RFC by Dr. Welch, as well as the opinion of Dr. Radnovich, not previously before ALJ Henrie, indicate that Petitioner's condition worsened. Specifically, on January 31, 2005,  Dr. Welch noted that Petitioner's impairments have or will last for twelve months, she suffers from vertigo, she will often have interference from her symptoms on her concentration and attention in the workplace, she will need to shift positions at will, need to take unscheduled breaks in an 8-hour workday, should not lift even 10 pounds, and will likely miss work more than four times a month as a result of her impairments or treatments for them.[7]  (AR 366-367.)

In reviewing ALJ Flanagan's conclusion, the Court notes that Dr. Welch's opinion was contradicted in part by two other evaluations provided by Dr. Radnovich, an examining physician (AR 353-357), and the DDS medical consultant Dr. Thomas Coolidge, a non examining physician (AR 381-388).[8]  Of the three, Dr. Welch's opinion is the only opinion

---

[7] The Court notes that Anne Aastum testified that if the Petitioner missed four or more days of work per month she would not be able to work.  (AR 526.)

[8] The ALJ gave "significant weight" to Dr. Radnovich's opinion as supported by Dr. Coolidge's opinion finding that Petitioner was able to "lift/carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; and sit (with normal breaks) for a total of about 6 hours in an 8 hour workday." (AR 23.)   Further, ALJ Flanagan concluded that "her handling, hearing, speaking, and traveling are unimpaired. Bending, twisting, stooping, and squatting can be done frequently during the workday, but not continuously." (AR 23.)  However, the Court finds that despite giving Dr. Radnovich's and Dr. Coolidge's opinions significant weight, ALJ Flangan's conclusion is inconsistent with their findings.  Dr. Radnovich's report and the DDS medical consultant's reports support a finding that Petitioner would not be able to stoop, kneel, crouch or crawl frequently (two thirds of the time) but only occasionally (one third of the time). However, SSR85-15 states that if a person can stoop or crouch occasionally, "the sedentary and light occupational base is virtually intact." SSR 85-15. Further SSR 85-15 states that limitations on crawling and kneeling are of little significance as they are relatively rare activity even in arduous work. SSR 85-15.  The ALJ's failure to recognize the extent of her limitations stooping,

placing such significant limitations on the Petitioner's physical abilities, and Drs. Radnovich's

and Coolidge's opinions do not address Petitioner's absences from work or how her symptoms

would affect her concentration.  However, in contrast to Dr. Welch's conclusion that Petitioner

should not lift even ten pounds, Dr. Radnovich placed no defined limit on lifting except to note

that Petitioner's ability to carry "more than ten pounds frequently would be limited by her age

and lumbosacral degenerative changes." (AR 355.)  Dr. Coolidge also concluded that Petitioner

could lift/carry ten pounds frequently but that she could lift/carry 20 pounds only occasionally.

Further, both Dr. Radnovich and Dr. Coolidge found that Petitioner would be unimpaired

in sitting, handling fine objects, hearing, speaking, and traveling.  Dr. Radnovich noted that

Petitioner's ability to stand with allowances for periods of rest and changing positions would be

unimpaired and that Petitioner's range of motion in her back was within normal limits except for

lateral flexion which was decreased to 20 degrees on the right and 15 degrees on the left.  (AR

354-355.)  Dr. Coolidge's RFC added that, due to Petitioner's chronic low back pain, Petitioner

should only climb stairs and ramps, balance, stoop, kneel, crouch, and crawl occasionally.  (AR

383.)  Thus, as the treating physician's opinion was contradicted, ALJ Flanagan, in rejecting Dr.

Welch's conclusion, was required to offer specific and legitimate reasons for doing so that are

supported by substantial evidence in the record.

Petitioner argues the fact that she stopped seeing Dr. Welch does not justify discrediting

fully his RFC opinion from 2005.  The Court agrees.  The weight of Dr. Welch's findings with

---

kneeling, crouching or crawling  would not affect ALJ Flanagan's determination that Petitioner
could perform light work, and thus, that she could perform her past work as a garment clerk
because it is classified as an unskilled occupation performed at the light exertional level.

respect to Petitioner's condition during his treatment of Petitioner should not be diminished

based on his retirement. However, given the fact that ALJ Flanagan cited other valid reasons for

discrediting Dr. Welch's opinion, as discussed below, this error is harmless.

Further, ALJ Flanagan discredited Dr. Welch's opinion as unsupported by any relevant

treatment records. The Court notes that the record contains very few treatment records from Dr.

Welch. Although the records that were created in close proximity to Dr. Welch's RFC

evaluation do show that Petitioner had chronic low back pain and tenderness in the back, they do

not quantify this pain in any manner. (AR 358, 360, 362.) The most detailed record provided by

Dr. Welch notes that "[s]he moves very slowly and stated she can hardly get out of bed in the

morning. She walks, but stiffly. There is tenderness from L2-S1 along both sides of her spine,

and along the spinous processes as well. She does not have full ROM, the limitation being due

to pain." (AR 364.) These brief records do support Dr. Welch's conclusion that Petitioner has

some limitation in movement due to pain which is consistent with his RFC; however, there is no

support or explanation in the record for Dr. Welch's belief that Petitioner would miss work more

than four days each month or that she would not be able to lift ten pounds frequently based on

her physical limitations.[9]  Considering that these conclusions were contradicted by Dr.

Radnovich's report, the Court finds that ALJ Flanagan did not err in his rejection of Dr. Welch's

RFC assessment.

Further, Petitioner indicated, and ALJ Flanagan discussed, that Dr. Welch's conclusions,

---

[9] Further, the Court notes that Dr. Welch did not complete the entire RFC, making no
statement with respect to Petitioner's ability to do repetitive reaching, handling or fingering; how
much she can stoop or crouch, and indicating with a question mark his impression regarding her
ability to and the length of time she can walk, sit, stand, or recline consecutively and during an
eight hour work day. (AR 366.)

including his determination that Petitioner would be absent from work more than four days each month, may have been based on his impression of Petitioner's mental health.  However, despite Dr. Welch's mention of Petitioner's anxiety beginning as early as 2003, he did not conduct any mental health assessments to determine the extent of her anxiety and the effect it would have on her ability to work.  Instead, the only specific evidence in the record regarding the alleged mental disorder, as discussed previously, indicated that Petitioner had no medically determinable mental health problem.  (AR 346-352.)  Therefore, the Court finds that ALJ Flanagan did not err by discrediting Dr. Welch's report based on his conclusion that there were no treatment records or objective medical evidence of mental impairment in the record.

Based on the foregoing, the Court finds that ALJ Flanagan did not err with respect to his analysis of Dr. Welch's opinion.

## D.    Petitioner's credibility

ALJ Flanagan's decision finding Petitioner not disabled was based at least in part on his conclusion that Petitioner's description of her symptoms was not entirely credible.  ALJ Flanagan found that the "claimants medically determinable impairments could reasonably be expected to produce the alleged low back symptoms, but that the claimants statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 25.)

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by specific, cogent reasons.  *Reddick*, 157 F.3d at 722.  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence.

**Memorandum Decision and Order - Page 16**

*Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See also Light v. Soc. Sec. Admin.*, 119

F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective

testimony on the basis that there is no objective medical evidence that supports the testimony).

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must

provide clear and convincing reasons for rejecting pain testimony.  *Burch*, 400 F.3d at 680.

General findings are insufficient; the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints.  *Reddick*, 157 F.3d at 722.

 The reasons an ALJ gives for rejecting a claimant's testimony must be supported by

substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294,

1296 (9th Cir. 1999).  If there is substantial evidence in the record to support the ALJ's

credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d

957, 959 (9th Cir. 2002).  When the evidence can support either outcome, the court may not

substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999).

 When evaluating credibility, the ALJ may engage in ordinary techniques of credibility

evaluation, including consideration of a claimant's reputation for truthfulness and

inconsistencies in claimant's testimony, or between claimant's testimony and conduct,

claimant's daily activities, claimant's work record, and testimony from physicians and third

parties concerning the nature, severity and effect of the symptoms of which claimant complains.

*Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider the

location, duration and frequency of symptoms; factors that precipitate and aggravate those

symptoms; the amount and side effects of medications; and treatment measures taken by the

claimant to alleviate those symptoms.  *See* Soc. Sec. Ruling 96-7p.

In the instant case, ALJ Flanagan discredited Petitioner's testimony for several reasons including the fact that her admitted daily activities contradicted her description of symptoms, she did not seek medical treatment for her pain, and the objective medical findings did not support the severity of Petitioner's symptoms.

First, the ALJ concluded Petitioner's daily activities were inconsistent with the severity of the pain symptoms she claimed.  In making this conclusion, the ALJ specifically identified Petitioner's ability to perform daily activities, including caring for pets, doing housework, sweeping, and driving a car.  The Court finds that the ALJ's conclusion is supported by the Petitioner's testimony. (AR 520-521, 523.)  Additionally, the Court notes that the evaluation by Dr. Radnovich which occurred about three months after Dr. Welch's observation states that Petitioner "moves about the examination room and up and down off the examination table without apparent difficulty.  She does not require an assistive device for ambulation." (AR 354.) Therefore, the Court find that the ALJ's conclusion was supported by substantial evidence and the Court will not overturn it.

Further, ALJ Flannagan discredited Petitioner's testimony based on the fact that she used heat and hot water packs to alleviate her pain and had not been seeking treatment for her low back pain.  The Court does not find this argument persuasive, because there is significant evidence in the record that Petitioner suffered financial problems and could not afford medication and treatments.   However, given that the ALJ provided other legitimate reasons for discrediting Petitioner's testimony, his error in reasoning is harmless.  *See Stout v. Commiserion , Social Sec. Admin*. 454 F.3d 1050 (9th Cir. 2006).

**Memorandum Decision and Order - Page 18**

Finally, ALJ Flanagan concluded that the objective medical signs and findings by Petitioner's treatment providers did not support Petitioner's testimony regarding the severity of her low back pain.[10]  Although the Court notes that this alone generally would not be sufficient to find Petitioner not credible, it is a legitimate factor for consideration when making credibility determinations.  The Court finds that ALJ Flanagan supported his conclusion with substantial evidence.  Specifically, he pointed to the only semi recent x-rays of Petitioner's lumbar spine taken in connection with Dr. Radnovich's examination which, upon review by Dr. Radnovich, showed only mild degenerative lumbar disease. (AR 355.) Dr. Radnovich's interpretation of the x-ray was supported by his physical examination which found that her range of motion was not severely limited.  This credibility determination by ALJ Flanagan  was supported further by Dr. Welch's statement that "this lady's disability is more mental, and her limitation is not musculoskeletal, except for her sumbosacral spine." (AR 364.) Thus, the Court finds that the ALJ's conclusion that Petitioner's objective medical evidence was not entirely consistent with the severity of her complaints was based on substantial evidence, particularly in light of the fact that the record lacks any more recent x-rays or medical tests contradicting his conclusion.

Based on the foregoing discussion, the Court finds there is substantial evidence in the record supporting the ALJ's finding with respect to Petitioner's credibility.[11]  Thus, where as in

---

[10] Petitioner testified that the pain in her back caused her significant limitations in her previous job which required bending and getting back up. (AR 510-513.) She further testified that it was difficult to get out of bed, get up without holding on to something and to lift things. Petitioner testified that she thought she could lift a 12 pack of soda with a "little" difficulty but that she would not be able to carry two of those 12 packs of soda.

[11] Though not addressed by ALJ Flanangan, there is some evidence in the record that Petitioner exaggerates her mental and possibly other symptoms. Statements by both Dr. Eisenbeiss and Dr. Welch support this conclusion.  Dr. Eisenbeiss stated: "[t]here is some minor difficulties with auditory memory.  How much of that is real and how much she is making that

**Memorandum Decision and Order - Page 19**

the instant case, the evidence could support either outcome, the Court may not substitute its

judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d at 1098.

**E.      ALJ Flanagan's RFC Determination**

Petitioner challenges ALJ Flanagan's RFC determination on the grounds that it did not

include all of her limitations, including: 1) her problems with repetitive fingering and handling

due to arthritis; 2) vertigo that would limit her ability to work at heights; 3) Dr. Welch's

limitations in his 2005 RFC assessment; 3) Dr. Radnovich's limitations for standing; 4) Dr.

Eisenbeiss' findings on concentration and memory; and 5) Petitioner's testimony regarding her

symptoms. (Memo in Support p. 20, Docket No. 15.)   Petitioner also objects to ALJ Flanagan's

assessment of her heart condition.  The Court will address each limitation in turn.

**1. Problems related to osteoarthritis in the hands**

Petitioner contends that the ALJ erred at step two and step four of the sequential

evaluation by determining that, despite ALJ Henrie's determination that Petitioner had severe

osteoarthritis in the hands, Petitioner's pain must have become non-severe as her more recent

records show no mention or evidence of hand pain.  Petitioner argues that ALJ Flanagan erred in

making this determination, because he needed to give ALJ Henrie's determination *res judicata*

effect under the *Chavez* because no new evidence had been presented.

In his decision, ALJ Flanagan stated:

The Claimant has the following severe impairment: Mild degenerative disc
disease, lumbar spine (20 CFR 416.920(c)).

Although ALJ Henrie found severe osteoarthritis involving the hands, this finding

---

up, I was unable to determine." (AR 352.)  Dr. Welch's statement that her limitations were
"more mental" also indicate some exaggeration on her part.  This also supports ALJ Flanagan's
conclusion that Petitioner was not entirely credible.

was based on rather meager objective medical signs and findings; essentially, only February 2003 X-rays and a report from Dr. James H. Bates, a CE physician. See Exhibit D-2F, prior file.  At the time of the May 2005 CE report from Dr. Radnovich, the claimant did not even complain of hand pain, nor did she mention hand pain at the most recent administrative hearing.  The most recent outpatient notes do not refer to hand pain (Exhibit E-9F).  I therefore infer that hand arthritis reverted to "non-severe" following the prior adverse ALJ decision.   In this manner, her current records actually show a lesser rather than a "greater" disability (see *Chavez* dicussion above). (AR 22.)

The Court finds that ALJ Flanagan's conclusion was in error.  As noted above, even if the *Chavez* presumption is rebutted, the ALJ must adopt the prior ALJ's conclusions with respect to the sequential steps where no new information has been presented.  There is nothing new in the record presented by Petitioner indicating that Petitioner's severe arthritis had dissipated or worsened.  Instead, Petitioner mentioned her arthritis in her application (AR 329) and complained of wrist and thumb pain in her interview with Dr. Eisenbleiss (AR 347), as well as problems holding onto items in her testimony.  Thus, the Court finds that ALJ Flanagan erred in his conclusion that Petitioner's arthritis had resolved itself and was no longer severe.

Thus, under the standard set forth in *Chavez*, as Petitioner presented no new evidence that her condition had worsened, ALJ Henrie's conclusion with respect to her severe osteoarthritis at step two and his consideration of the limitations caused by her arthritis in his RFC assessment should have been given res judicata effect by ALJ Flanagan.  Nonetheless, the Court finds that ALJ Flanagan's error is harmless because ALJ Henrie's original RFC determination took into account Petitioner's severe arthritis in the hands yet found Petitioner not disabled.  Further, the new evidence presented to ALJ Flanagan by means of Dr. Radnovich's opinion does not demonstrate that Petitioner's arthritis related problems had worsened.  Instead, the examination by Dr. Radnovich does not describe any arthritis related limitations.  The report noted that she

has full flexion and deviation in her wrists and that her grip strength is a 5 out of 5.  Further he

noted that she has upper extremity strength of 5.[12]  (AR 356.)  Further, Dr. Welch did not include

any hand or wrist limitations in his RFC assessment. (AR 367.)  Thus, the Court finds that,

despite the failure to apply *res judicata* to ALJ Henrie's conclusion with respect to Petitioner's

severe osteoarthritis, the ALJ Flanagan's conclusion that her arthritis does not provide any

substantive limitations is supported by substantial evidence and he did not err by not including

limitations associated with grip and flexion in his RFC assessment.

### *2.* Vertigo

Petitioner alleges that ALJ Flanagan erred by not considering Petitioner's vertigo.  As no

new evidence was presented with respect to limitations due to Petitioner's vertigo, ALJ Henrie's

conclusions with respect to Petitioner's vertigo should have been given *res judicata* effect by

ALJ Flanagan.  There is no indication in ALJ Flanagan's opinion whether he considered any

those limitations; however, similar to the arthritis analysis above, there is no new evidence in the

record indicating that the vertigo was more limiting than it was when ALJ Henrie made his

decision finding Petitioner not disabled.  Additionally, the RFC reports completed by Drs.

Radnovich and Welch did not include any limitations associated with her vertigo that would

have affected Petitioner's ability to do work in the light category or limit her ability to do her

past relevant work.  Therefore, ALJ Flangan's error is harmless.

### 3.  Cardiovascular Impairment

Petitioner also argues that the ALJ erred in his consideration of her cardiovascular

impairment.  ALJ Flanagan stated:

---

[12] Dr. Coolidge bases his conclusion that she has no fingering limitations etc. on Dr.
Radnovich's report.

> [W]ith respect to the issue of cardiovascular impairment, the claimant's
> hypertension is well-controlled on medication, and non-severe (Exhibits E-3F/3,
> E-9F/1).  There is also asymptomatic valvular heart disease; with status-post
> remote open heart surgery for valve repair (1967).  This impairment is "non-
> severe" (Exhibit E-3F/3.)  Indeed, the claimant worked at the SGA-level for
> several years after the open heart surgery.  There is really no evidence of
> significant sequelae from heart surgery.  Although the claimant was treated in the
> emergency room in October 2006 for an apparent one-time flare up of cardiac
> symptoms (Exhibit 8F/1), she improved significantly following hydration.  There
> were no significant EKG or chest X-ray findings.  Within one week, she had fully
> recovered and told her doctor that she felt "fine and was "asymptomatic" (Exhibit
> 9F/5) Based on this evidence, I conclude that whatever cardiac residuals exists
> did not remain "severe" for 12 continuous months (20 CFR 416.909). (AR 22.)

Despite Petitioner's contentions and some conflicting evidence in the record, the ALJ's

conclusion that Petitioner's cardiovascular impairments did not impose significant limitations on

her ability to work is supported by substantial evidence in the record.  Several times, Petitioner

noted that her heart problems were not a significant part of her disability (AR 353), that she felt

asymptomatic, and that she could not afford further cardio workup (AR 416).  Further, during the

hearing, Petitioner did not mention any limitations associated with her cardiovascular disease

and none were identified based on Dr. Radnovich's or Dr. Welch's reports.  Thus, despite the

fact that there is conflicting evidence in the record, ALJ Flanagan's conclusion is supported by

substantial evidence and will not be disturbed by the Court.

### 4.  Petitioner's other arguments

Finally, with respect to ALJ Flanagan's consideration of Dr. Welch's limitations, Dr.

Radnovich's limitations, Dr. Eisenbeiss' findings on concentration and memory, and the weight

given to Petitioner's testimony, these issues all have been addressed above and will not be

addressed again here.

## V.

### Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

### <u>ORDER</u>

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.



DATED: September 4, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge